IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| RICHARD HOLLINGSWORTH, | ) | |
| #276 260, | ) | |
|     Plaintiff, | ) | |
| | ) | |
|     v. | ) | CIVIL ACTION NO.:  2:12-CV-472-WHA |
| | ) | [WO] |
| KIM THOMAS, | ) | |
| A.D.O.C. COMMISSIONER, *et al.*, | ) | |
| | ) | |
|     Defendants. | ) | |

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

In this 42 U.S.C. § 1983 action, Plaintiff, a state inmate incarcerated at the Holman Correctional Facility in Atmore, Alabama, challenges the constitutionality of actions taken against him during his incarceration at the Kilby Correctional Facility ["Kilby"] in 2012.[1]  He contends that he was  provided inadequate medical care for his serious medical needs and that on May 17, 2012, he was subjected to excessive force which exacerbated his serious medical condition. Name as defendants are Commissioner Kim Thomas, Correctional Officer Irving Harris, and Nurse Marianne Baker. Plaintiff seeks injunctive relief, damages, court costs, and expenses. Plaintiff requests trial by jury.

Defendants filed special reports and supporting evidentiary materials addressing Plaintiff's claims for relief. In these documents, Defendants deny they acted in violation of Plaintiff's constitutional rights. Defendant Baker also asserts the complaint is due to be

---

[1] During the pendency of this action Plaintiff was transferred to the Holman Correctional Facility in Atmore, Alabama.

dismissed because Plaintiff failed to exhaust properly an administrative remedy available to him through the prison system's medical care provider regarding the medical claims in this cause of action prior to filing the complaint. *Doc. No. 19; Doc. No. 24, Exh. A*. The court granted Plaintiff an opportunity to file a response to Defendants' reports in which he was advised, among other things, to "specifically address the medical defendant's argument that he [ ] failed to exhaust his available administrative remedies as required by 42 U.S.C. § 1997e(a) of the Prison Litigation Reform" prior to filing this federal civil action. *Doc. No. 30 at 1 and fn.1*. "[A]n exhaustion defense ... is not ordinarily the proper subject for a summary judgment; instead it 'should be raised in a motion to dismiss, or be treated as such if raised in a motion for summary judgment.' " *Bryant v. Rich*, 530 F.3d 1368, 1374-1375 (11th Cir. 2008) (quoting *Ritza v. Int'l Longshoremen's & Warehousemen's Union*, 837 F.2d 365, 368–369 (9th Cir.1988). The court deems it appropriate to treat Defendant Baker's report as a motion to dismiss.  The court deems it appropriate to treat the correctional defendants' report as a motion for summary judgment. This case is now pending on Defendants' dispositive motions.

## I.  STANDARD OF REVIEW

"Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine [dispute] as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Greenberg v. BellSouth Telecomm., Inc.*, 498 F.3d 1258, 1263 (11th  Cir. 2007) (*per curiam*) (citation to former rule omitted); Fed.R.Civ.P. Rule 56(a) ("The court shall grant summary judgment if the movant shows that there is no

genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."). The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [record, including pleadings, discovery materials and affidavits], which it believes demonstrate the absence of a genuine [dispute] of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant may meet this burden by presenting evidence indicating there is no dispute of material fact or by showing the nonmoving party has failed to present evidence to support some element on which it bears the ultimate burden of proof. *Id*. at 322-324.

The correctional defendants have met their evidentiary burden. Thus, the burden shifts to Plaintiff to establish, with appropriate evidence beyond the pleadings, that a genuine dispute material to his case exists. *Clark v. Coats & Clark, Inc.,* 929 F.2d 604, 608 (11th Cir. 1991); *Celotex*, 477 U.S. at 324; Fed.R.Civ.P. 56(e)(3) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required [by citing to materials in the record including affidavits, relevant documents or other materials] the court may ... grant summary judgment if the motion and supporting materials -- including the facts considered undisputed -- show that the movant is entitled to it."). A genuine dispute of material fact exists when the nonmoving party produces evidence that would allow a reasonable fact-finder to return a verdict in its favor. *Greenberg*, 498 F.3d at 1263. To survive Defendants' properly supported motions for summary judgment, Plaintiff is required to produce "sufficient [favorable] evidence" which would be admissible at trial supporting his claims for relief. *Anderson v. Liberty*

*Lobby, Inc.*, 477 U.S. 242, 249 (1986); Rule 56(e), *Federal Rules of Civil Procedure*. "If the evidence [on which the nonmoving party relies] is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-250 (internal citations omitted). "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the [trier of fact] could reasonably find for that party. *Anderson v. Liberty Lobby*, 477 U.S. 242, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986)." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990). Conclusory allegations based on subjective beliefs likewise cannot create a genuine issue of material fact and, therefore, do not suffice to oppose a motion for summary judgment. *Holifield v. Reno*, 115 F.3d 1555, 1564 n.6 (11th Cir. 1997) (plaintiff's "conclusory assertions ..., in the absence of [admissible] supporting evidence, are insufficient to withstand summary judgment."); *Harris v. Ostrout*, 65 F.3d 912, 916 (11th Cir. 1995) (grant of summary judgment appropriate where inmate produces nothing beyond his own conclusory allegations challenging actions of the defendants); *Fullman v. Graddick*, 739 F.2d 553, 557 (11th Cir. 1984) ("mere verification of party's own conclusory allegations is not sufficient to oppose summary judgment...."). Hence, when a plaintiff fails to set forth specific facts supported by requisite evidence sufficient to establish the existence of an element essential to his case and on which the plaintiff will bear the burden of proof at trial, summary judgment is due to be granted in favor of the moving party. *Celotex*, 477 U.S. at 323 ("[F]ailure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."); *Barnes v. Southwest Forest Industries, Inc.*, 814 F.2d 607, 609 (11th Cir. 1987) (If on any

part of the prima facie case the plaintiff presents insufficient evidence to require submission of the case to the trier of fact, granting of summary judgment is appropriate).

For summary judgment purposes, only disputes involving material facts are relevant. *United States v. One Piece of Real Property Located at 5800 SW 74th Avenue, Miami, Florida*, 363 F.3d 1099, 1101 (11th Cir. 2004).  What is material is determined by the substantive law applicable to the case. *Anderson*, 477 U.S. at 248; *Lofton v. Secretary of the Dept. of Children and Family Services*, 358 F.3d 804, 809 (11th Cir. 2004) ("Only factual disputes that are material under the substantive law governing the case will preclude entry of summary judgment.").  "The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case." *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003).  To demonstrate a genuine dispute of material fact, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts....  Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine [dispute] for trial.'" *Matsushita Elec. Indus. Co. Ltd., v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (internal citations omitted).  In cases where the evidence before the court which is admissible on its face or which can be reduced to admissible form indicates there is no genuine dispute of material fact and establishes the party moving for summary judgment is entitled to it as a matter of law, summary judgment is proper. *Celotex*, 477 U.S. at 323-324 (Summary judgment is appropriate where pleadings, evidentiary materials and affidavits before the court show there is no genuine dispute as

to a requisite material fact.);   *Waddell v. Valley Forge Dental Associates, Inc.*, 276 F.3d 1275, 1279 (11th Cir. 2001) (to establish a genuine dispute of material fact, the nonmoving party must produce evidence such that a reasonable trier of fact could return a verdict in his favor.).

Although factual inferences must be viewed in a light most favorable to the nonmoving party and *pro se* complaints are entitled to liberal interpretation by the courts, a *pro se* litigant does not escape the burden of establishing by sufficient evidence a genuine dispute of material fact. *See Beard*, 548 U.S. at 525; *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990). Thus, Plaintiff's *pro se* status alone does not mandate this court's disregard of elementary principles of production and proof in a civil case. Here, Plaintiff has demonstrated a genuine dispute of material fact to preclude entry of summary judgment on his excessive force claim against Defendant Harris. Defendant Thomas, however, is entitled to summary judgment on the claim lodged against him by Plaintiff as Plaintiff fails to demonstrate a requisite genuine dispute of material fact against this defendant to preclude summary judgment. *Matsushita*, *supra*.

## II.  DISCUSSION

*A. Injunctive Relief*

Plaintiff requests injunctive relief against Defendants. Plaintiff is  no longer incarcerated at Kilby.  The transfer or release of a prisoner renders moot any claims for injunctive or declaratory relief. *See  County of Los Angeles v. Davis*, 440 U.S. 625, 631 (1979); *see also Cotterall v. Paul*, 755 F.2d 777, 780 (11th Cir. 1985) (past exposure to even illegal conduct does not in and of itself show a pending case or controversy

regarding injunctive relief if unaccompanied by any continuing present injury or real and immediate threat of repeated injury).  As it is clear from the pleadings and records before the court that Plaintiff is no longer incarcerated at Kilby,  his request for equitable relief has been rendered moot.

*B. Defendant Baker*

   *i. Exhaustion*

   "When deciding whether a prisoner has exhausted his remedies, the court should first consider the plaintiff's and the defendants' versions of the facts, and if they conflict, take the plaintiff's version of the facts as true.  'If in that light, the defendant is entitled to have the complaint dismissed for failure to exhaust administrative remedies, it must be dismissed.'  *Turner v. Burnside*, 541 F.3d 1077, 1082 (11th Cir. 2008) (*citing Bryant*, 530 F.3d at 1373–74). If the complaint is not subject to dismissal at this step, then the court should make 'specific findings in order to resolve the disputed factual issues related to exhaustion.'  *Id*. (*citing Bryant*, 530 F.3d at 1373–74, 1376)."  *Myles v. Miami-Dade County Correctional and Rehabilitation Dept*., 476 Fed.Appx. 364, 366 (11th Cir. 2012).

   Plaintiff challenges the adequacy of medical care he received for his hernia.  In response to the complaint, Defendant Baker denies she provided Plaintiff with constitutionally inadequate medical care and  argues this case is subject to dismissal because Plaintiff failed to exhaust the administrative remedy provided by the institutional medical care provider prior to filing this complaint as required by the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a).  As explained, federal law directs this court to treat Defendant's response as a motion to dismiss for failure to exhaust an administrative

remedy and allows the court to look beyond the pleadings to relevant evidentiary materials in deciding the issue of proper exhaustion. *Bryant*, 530 F.3d at 1375.

The Prison Litigation Reform Act compels exhaustion of available administrative remedies before a prisoner can seek relief in federal court on a § 1983 complaint. Specifically, 42 U.S.C. § 1997e(a) states that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." "Congress has provided in § 1997(e)(a) that an inmate must exhaust irrespective of the forms of relief sought and offered through administrative remedies." *Booth v. Churner*, 532 U.S. 731, 741 n.6 (2001). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). Exhaustion of all available administrative remedies is a precondition to litigation and a federal court cannot waive the exhaustion requirement. *Booth*, 532 U.S. at 741; *Alexander v. Hawk*, 159 F.3d 1321, 1325 (11th Cir. 1998); *Woodford v. Ngo*, 548 U.S. 81 (2006). Moreover, "the PLRA exhaustion requirement requires proper exhaustion." *Id*. at 93 (emphasis added). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules [as a precondition to filing suit in federal court] because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings.... Construing § 1997e(a) to require proper exhaustion ... fits with the general scheme of the PLRA, whereas [a contrary] interpretation [allowing an

inmate to bring suit in federal court once administrative remedies are no longer available] would turn that provision into a largely useless appendage." *Id*. at 90-91, 93.  The Court reasoned that because proper exhaustion of administrative remedies is necessary an inmate cannot "satisfy the Prison Litigation Reform Act's exhaustion requirement . . . by filing an untimely or otherwise procedurally defective administrative grievance or appeal[,]" or by effectively bypassing the administrative process simply by waiting until the grievance procedure is no longer available to him. *Id.* at 83-84; *Johnson v. Meadows*, 418 F.3d 1152, 1157 (11th Cir. 2005) (inmate who files an untimely grievance or simply spurns the administrative process until it is no longer available fails to satisfy the exhaustion requirement of the PLRA).  "The only facts pertinent to determining whether a prisoner has satisfied the PLRA's exhaustion requirement are those that existed when he filed his original complaint." *Smith v. Terry*, 491 Fed.Appx. 81, 83 (11th Cir. 2012) (*per curiam*).

The health care provider for the Alabama Department of Corrections provides a grievance procedure for inmate complaints related to the provision of medical treatment. *Doc. No.24, Exh. A*.  Inmates may voice complaints regarding any medical treatment sought or received during their incarceration. *Id*. The grievance process is initiated when an inmate submits a medical grievance form to the Health Services Administrator ["HSA"] through the institutional mail system. *Id*. The HSA or his/her designee reviews the grievance and return the form to the inmate containing a  written response at the bottom of the grievance form within ten (10) working days of receipt of the medical grievance.  *Id*. When the grievance response has been completed, the form is annotated in

the grievance log.  *Id*. After the grievance is logged, answered, and annotated, a copy of the written response is made with the original response maintained on file with the grievance log. *Id*.  Copies of the written response are delivered to correctional personnel for distribution to the appropriate inmate. *Id.* The grievance form contains a notation apprising inmates that if they wish to appeal the initial response, they may request a grievance appeal form from the HSA. *Id.*  The notation further directs inmates to return the completed grievance appeal form to the attention of the HSA by placing the form in the sick call request boxes located throughout the facility or by giving it to the segregation sick call nurse on rounds.  *Id*.

Defendant Baker submitted the affidavit of Dallas Diaz, the HSA at Kilby during the relevant time period. *Doc. No. 24, Diaz Affidavit.* At the time of the actions about which Plaintiff complains, Nurse Diaz was responsible for addressing inmate grievances regarding their medical care.  *Id.* Nurse Diaz affirms that inmate grievances were his responsibility.  *Id.* After reviewing the grievance files kept at Kilby he determined that during the time Plaintiff was incarcerated at the facility he filed no medical grievances and specifically filed no medical grievances regarding his hernia or requests for medical treatment related to his hernia. *Id.*

The court granted Plaintiff an opportunity to respond to the exhaustion defense raised by Defendant Baker in her motion to dismiss.  *Doc. No. 30*.  In his response, Plaintiff conclusorily alleges that he filed grievances regarding his medical care but never received a response. Plaintiff does not allege, however, that he sought any remedies complaining that his institutional medical grievances were ignored nor has he provided

copies of the alleged medical grievances he contends were ignored. *Doc. No. 25* at 3. Plaintiff also submitted the affidavit of an inmate who states he was housed in the cell across from Plaintiff's cell in April and May 2012 and personally saw Plaintiff hand deliver a medical grievance to a nurse on three separate occasions. *Id. at Jemison Affidavit.* Although Plaintiff's and Defendant's allegations conflict, Plaintiff's allegation he was impeded in his effort to exhaust administrative remedies is assumed to be true for purposes of this Recommendation. *Turner v. Burnside, supra*.

The court turns to the second *Turner* step where Defendant Baker bears the burden of establishing a lack of exhaustion. Defendant Baker's evidence establishes that the health care unit at Kilby provides a procedure for inmates who wish to submit a grievance regarding medical treatment and care sought and/or provided. Inmate grievance forms are available to inmates at Kilby for the purpose of submitting a grievance related to the provision of health care, inmate grievances are answered within a designated time frame, and the inmate grievance form provides information about how an inmate may appeal the response he receives to his initial inmate grievance. Plaintiff's evidence has not successfully rebutted this showing that a grievance process was available at Kilby during the time of his incarceration. Plaintiff's conclusory assertions that he filed several grievances that went unanswered fails to overcome Defendant's evidence showing that a grievance system was available at the institution for Plaintiff's claims and that he failed to exhaust properly the administrative remedy available to him. *See Brewington v. Daniels*, 2012 WL 6005780 *4-5  (M.D.Ala. 2012) (inmate's conclusory assertion he complied with grievance procedures but  medical staff failed to timely respond to his initial medical

grievance insufficient to overcome Defendants' evidence showing that a grievance system was available for Plaintiff's claims); *White v. Tharp*, 2008 WL 596156 *10 (D.Colo. Feb. 29, 2008) (Inmate failed to demonstrate exhaustion of available administrative remedies by failing to provide copies of his grievances to the court or any actual evidence that would allow the court to conclude that they were filed); *Maclary v. Carroll*, 142 Fed.Appx. 618, 620 (3rd Cir. 2005) (inmate's unsupported conclusory allegations he filed grievances which went unanswered and unprocessed were insufficient to overcome defendants' evidence that he failed to exhaust available administrate remedies). Further, the inmate affidavit submitted by Plaintiff to support his opposition indicates only that the inmate observed Plaintiff hand a grievance to a nurse on three occasions. Thus, this evidentiary submission, without more, has no relevance to the issue of whether Plaintiff exhausted his administrative remedies regarding his claim he was denied adequate medical care and treatment for his hernia. At most, the inmate affidavit demonstrates Plaintiff's awareness of the medical grievance procedure.

The court has carefully reviewed the pleadings, documents, and records filed and finds that Plaintiff has failed to make a colorable showing he exhausted properly his administrative remedies and/or demonstrated that he was denied access to those administrative remedy procedures. The undersigned finds there is no dispute of material fact that Plaintiff failed to exhaust properly his administrative remedies regarding his claim of deliberate indifference to his medical needs. *See Bock*, 549 U.S. at 218 ("The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the

PLRA, that define the boundaries of proper exhaustion."). The court, therefore, concludes that Plaintiff's medical claim is subject to dismissal as Plaintiff failed to exhaust properly an administrative remedy available to him which is a precondition to proceeding in this court on this claim. *Woodford*, 548 U.S. at 87–94. *See  Marsh v. Jones*, 53 F.3d 707, 710 (5th Cir. 1995) ("Without the prospect of a dismissal with prejudice, a prisoner could evade the exhaustion requirement by filing no administrative grievance or by intentionally filing an untimely one, thereby foreclosing administrative remedies and gaining access to a federal forum without exhausting administrative remedies.").

Despite this finding, the court will address the merits of plaintiff's Eighth Amendment claim.

### ii.  Deliberate Indifference

Plaintiff has a hernia confirmed by medical personnel. He complains, however, that despite complaining of extreme pain and discomfort caused by his condition he was only prescribed aspirin for pain relief. Plaintiff also complains that Defendant Thomas failed to respond to his request that the Commissioner intervene by allowing Plaintiff to receive emergency treatment *Doc. No. 1* at 3.

Plaintiff submitted a sick call request on January 16, 2012, complaining of pain in his crotch. Defendant Baker examined Plaintiff on January 17, 2012, at which time she determined that he had a small reducible inguinal hernia which had been present for as short time. Because Plaintiff's hernia was small and reducible, Defendant Baker recommended conservative treatment which included providing Plaintiff with a truss belt for six months, a sixty-day supply of Motrin, 600 mg., a bottom bunk profile for six

months, and a no straining/limited lifting profile (no more than 20 pounds) for six months. Thereafter Defendant Baker saw Plaintiff for various medical complaints only of two of which concerned his hernia. On March 28, 2012, Plaintiff submitted a sick call slip requesting pain medication for his hernia, new glasses because his were broken, and treatment for a rash on his face. He was seen by medical staff on March 29, 2012, for his complaints at which time he was provided with patient education, allergy medication, and his glasses were sent for repair. On April 5, 2012, Plaintiff was prescribed a sixty-day supply of Motrin, 600 mg. Defendant Baker last saw Plaintiff on May 21, 2012, for his sick call slip submitted May 20, 2012, in which he complained his hernia had hurt more within the past three to four weeks and that after an incident with Officer Harris on May 17, 2012, he had felt constant discomfort.[2] Defendant Baker noted Plaintiff's hernia was still soft, small, easily reduced, and non-strangulated. She prescribed Plaintiff a thirty-day supply of Motrin, 800 mg., and reviewed with him the safety measures and precautions he should take regarding his condition. *Doc. No. 19, Plaintiff's Medical Records*.

To prevail in a suit based on an Eighth Amendment claim about medical attention, a prisoner must show at a minimum that prison or medical officials have acted with deliberate indifference to serious medical needs. *Estelle v. Gamble*, 429 U.S. 97 (1976); *Aldridge v. Montgomery*, 753 F.2d 970, 972 (11th Cir. 1985). "Because society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are

---

[2] Plaintiff was transferred to the Holman Correctional Facility on or about June 12, 2012. *See Doc. No. 19, Exh. 1*.

'serious.'" *Hudson   v. McMillian*, 503 U.S. 1, 9 (1992). "A serious medical need is one

that has been diagnosed by a physician as mandating treatment or one so obvious that

even a lay person would easily recognize the necessity for a doctor's attention." *Hill v.*

*Dekalb Reg'l Youth Det. Ctr.*, 40 F.3d 1176, 1187 (11th Cir.1994), *overruled in part on*

*other grounds by Hope v. Pelzer*, 536 U.S. 730, 739 (2002).   A prison or medical official

may be held liable under the Eighth Amendment for acting with "deliberate indifference"

to inmate health or safety only if he knows that the inmate faces a substantial risk of

serious harm and disregards that risk by failing to take reasonable measures to abate it.

*Farmer v. Brennan*, 511 U.S. 825, 837 (1994).  Under this standard, a prison or medical

official does not act with indifference by providing medical care different from that which

a prison inmate desires.  *See Hamm v. De Kalb County*, 774 F.2d 1567, 1575 (11th Cir.

1985).

Plaintiff's medical records demonstrate that he was examined by medical

personnel for his hernia pursuant to his requests and that he has received pain medication,

various profiles, and a truss belt.   Plaintiff did not get surgery for his hernia, but that fact

alone does not establish deliberate indifference. *See Jackson v. Jackson*, 456 Fed. Appx.

813, 814–15 (11th Cir. 2012) (noting "it is common medical practice to postpone surgery

until a hernia becomes strangulated" and finding that any "delay in receiving surgery was

because the hernia remained treatable without surgery and posed no risk to [the inmate's]

health.").[3]  Based on his presenting symptoms, Plaintiff was provided conservative

---

[3] "Unpublished opinions are not considered binding precedent, but they may be cited as persuasive
authority." 11th Cir.R. 36-2.

medical treatment for his hernia. That Plaintiff wanted a different treatment modality or medication regimen does not establish deliberate indifference by Defendant Baker. *See Hamm*, 774 F.2d at 1575. Moreover, Plaintiff has failed to come forward with any evidence showing that Defendant Baker knew that the manner in which she was treating him created a substantial risk to him and she disregarded that risk. *See McElligott v. Foley,* 182 F.3d 1248, 1255 (11th Cir. 1999) (for liability to attach, the official must know of and then disregard an excessive risk to the prisoner). Absent such a showing by Plaintiff, he is entitled to no relief on his Eighth Amendment claim against Defendant Baker.

## C. *Defendants Harris and Thomas*

### i. *Absolute Immunity*

To the extent the alleged constitutional violations Plaintiff lodges against Defendants Thomas and Harris are made against them in their official capacities, they are entitled to absolute immunity from monetary damages. Official capacity lawsuits are "in all respects other than name, . . . treated as a suit against the entity." *Kentucky v. Graham*, 473 U. S. 159, 166 (1985). "A state official may not be sued in his official capacity unless the state has waived its Eleventh Amendment immunity, *see Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 100 (1984), or Congress has abrogated the state's immunity, *see Seminole Tribe v. Florida*, [517 U.S. 44, 59], 116 S. Ct. 1114, 1125 (1996). Alabama has not waived its Eleventh Amendment immunity, see *Carr v. City of Florence*, 916 F.2d 1521, 1525 (11th Cir. 1990) (citations omitted), and Congress has not abrogated Alabama's immunity. Therefore, Alabama state officials are

immune from claims brought against them in their official capacities." *Lancaster v. Monroe County*, 116 F.3d 1419, 1429 (11th Cir. 1997).

In light of the foregoing, it is clear that Defendants Thomas and Harris are state actors entitled to sovereign immunity under the Eleventh Amendment for claims seeking monetary damages from them in their official capacity. *Lancaster*, 116 F.3d at 1429; *Jackson v. Georgia Department of Transportation*, 16 F.3d 1573, 1575 (11th Cir. 1994).

*ii. Defendant Thomas*

Plaintiff alleges he sought the assistance of Defendant Thomas in obtaining emergency surgery for his hernia but claims his request went unanswered. *Doc. No. 1.* Defendant Thomas affirms he does not know of seeing or receiving a complaint from Plaintiff regarding his medical treatment claim. In accordance with agency procedure, written complaints received in the Central Officer of the ADOC regarding inmate medical issues are directed to the Associate Commissioner of Medical Services. Defendant Thomas further asserts he is not a medical professional and does not make medical decisions regarding an inmate's medical care. *Doc. No. 28, Exh. 1.*

Plaintiff  presents no evidence sufficient to create a genuine issue of disputed fact regarding the claim that Defendant Thomas acted with deliberate indifference to his medical needs.  It is clear from the pleadings filed in this case that Defendant Thomas is not a health care professional and, as former Commissioner for the ADOC, did not make decisions regarding inmate medical care and treatment and did not attempt to intercede, overrule, or influence decisions made by medical personnel regarding inmate medical care.  *Doc. No. 28, Exh*. *1*. There is nothing before the court which indicates this

defendant personally participated in or had any direct involvement with the medical treatment provided to Plaintiff.

The undisputed evidentiary materials demonstrate that medical personnel made all decisions relative to the course of treatment provided to Plaintiff.  The law does not impose upon correctional officials a duty to directly supervise health care personnel, to set treatment policy for the medical staff, or to intervene in treatment decisions where they have no actual knowledge that intervention is necessary to prevent a constitutional wrong.  *See Spruill v. Gillis*, 372 F.3d 218, 236 (3rd Cir. 2004) (absent a  reason to believe, or actual  knowledge, that medical staff is administering inadequate medical care, non-medical prison personnel are not chargeable with the Eighth Amendment scienter requirement of deliberate indifference); *Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003) (holding that a supervisory official is liable only if he "personally participate[d] in the alleged unconstitutional conduct or [if] there is a causal connection between [his] actions ... and the alleged constitutional deprivation.");  *Antonelli v. Sheahan*, 81 F.3d 1422, 1428 (7th  Cir. 1996) ( "a prisoner may not attribute any of his constitutional claims to higher officials by the doctrine of *respondeat superior*; the official must actually have participated in the constitutional wrongdoing.") (internal quotations omitted);  *Vinnedge v. Gibbs*, 550 F.2d 926 (4th Cir. 1977) (a medical treatment claim cannot be brought against managing officers of a prison absent allegations they were personally connected with the alleged denial of treatment).

The record is devoid of evidence that Defendant Thomas knew of specific facts from which an inference could be drawn that a substantial risk of harm existed to

Plaintiff, that he actually drew this inference and thereafter ignored the risk.  Plaintiff has, therefore, failed to establish the requisite element of subjective awareness by Defendant Thomas.  *See Carter v. Galloway*, 352 F.3d 1346, 1350 (11th Cir. 2003).   Summary judgment is due to be granted in favor of Defendant Thomas on Plaintiff's deliberate indifference claim.

> ### *iii. Defendant Harris*
>
> #### *a. Qualified Immunity*

Regarding Plaintiff's excessive force claim lodged against Defendant Harris in his individual capacity, Defendant Harris argues he is entitled to qualified immunity. However, "'there is no room for qualified immunity' in Eighth Amendment . . . excessive force cases because they require a subjective element that is 'so extreme' that no reasonable person could believe that his actions were lawful."  *Danley v. Allen*, 540 F.3d 1298, 1310 (11th Cir. 2008) (quoting *Johnson v. Breeden*, 280 F.3d 1308, 1321-22 (11th Cir. 2002)), *overruled on other grounds as recognized by Randall v. Scott,* 610 F.3d 701, 709 (11th Cir. 2010)).   Thus, a qualified immunity defense is not available when a plaintiff properly pleads the use of excessive force and the only question for a federal district court is whether the plaintiff has alleged facts sufficient to survive a motion for summary judgment. *Skritch v. Thornton*, 280 F.3d 1295, 1303 (11th Cir. 2002); *see also Hudson v. McMillian*, 503 U.S. 1, 9-10 (1992); *Harris v. Chapman*, 97 F.3d 499, 505 (11th Cir. 1996).  Accordingly, this court will consider whether Plaintiff's allegations that Defendant Harris used excessive force against him, which the court must take as true for purposes of summary judgment, sets forth a violation of his Eighth Amendment rights.

                    *b. Excessive Force*

Claims of excessive force by prison officials against convicted inmates are governed by the Eighth Amendment's proscription against cruel and unusual punishment. *Campbell v. Sikes*, 169 F.3d 1353, 1374 (11th Cir. 1999).  The standard applied to an Eighth Amendment excessive force claim contains both a subjective and objective component. *Hudson*, 503 U.S. at 8. The subjective component requires that prison "officials act[ed] with a sufficiently culpable state of mind."  *Id*.  (internal quotations omitted).  Regarding the objective component, a plaintiff must show that "the alleged wrongdoing was objectively harmful enough to establish a constitutional violation."  *Id*. (internal quotations omitted).  Not every malevolent touch by a prison official amounts to a deprivation of constitutional rights.  *Id*. at 9.   Summary applications of force are constitutionally permissible when prison security and order, or the safety of other inmates or officers, have been placed in jeopardy.  *Whitley*, 475 U.S. at 312.

In extending *Whitley* to all cases involving allegations of force, the *Hudson* Court reasoned:

> Many of the concerns underlying our holding in *Whitley* arise whenever guards use force to keep order.  Whether the prison disturbance is a riot or a lesser disruption, corrections officers must balance the need "to maintain or restore discipline" through force against the risk of injury to inmates.  Both situations may require prison officials to act quickly and decisively.  Likewise, both implicate the principle that "'[p]rison administrators . . . should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security.'"

503 U.S. at 6 (citations omitted).With these concerns in mind, the *Hudson* Court set out certain factors that should be considered in evaluating whether the use of force was wanton and unnecessary.  They include: 1) the extent of the injury suffered by the inmate; 2) the need for the application of force; 3) the relationship between the need and the amount of force used; 4) the threat reasonably perceived by the prison official; 5) any efforts made to temper the severity of a forceful response.   *Id*. at 7-8.   "From consideration of such factors, 'inferences may be drawn as to whether the use of force could plausibly have been thought necessary, or instead evinced such wantonness with respect to the unjustified infliction of harm as is tantamount to a knowing willingness that it occur.'  *Whitley*, 475 U.S. at 321, 106 S.Ct. 1078 (quoting *Johnson Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973))."   *Skrtich*, 280 F.3d at1300-1301. The *Hudson* Court made it clear that the extent of the injury suffered by the inmate is only one of the many factors which should be considered, not a decisive one when it said, "[t]he absence of serious injury is therefore relevant to the Eighth Amendment inquiry, but does not end it."  503 U.S. at 7. "An inmate who is gratuitously beaten by  guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury" *Wilkins v. Gaddy*, 556 U.S. 34, 38 (2010*); see also Hall v. Bennett*, 447 F. App'x 921, 923-24 (11th Cir. 2011) (unpublished) (per curiam) (*citing Wilkins*, 559 U.S. at 37-38) ("[W]hile [plaintiff's] medical reports did not note any obvious injuries, we are mindful of the fact that the focus of the inquiry is on the nature of the force applied, not the extent of the injury.").  Recognizing that the relief in such a case could be slender, the Court added that "even if [the inmate] succeeds, the relatively modest nature of his

alleged injuries will no doubt limit the damages he may recover." *Wilkins*, 559 U.S. at 40.

On May 17, 2012, Plaintiff states Defendant Harris assaulted him during a routine cell search. At the time of the assault, Plaintiff asserts he was handcuffed and "nonresisting." Plaintiff also contends that during the assault Defendant Harris "placed his full weight on top of Plaintiff's hernia" causing unbearable pain. *Doc. No. 1* at 3.

According to Defendant Harris' evidence, on May 17, 2012, Lieutenant Langford directed him to search Plaintiff's cell after information was received that he possessed a cell phone. With Officer Sheppard, Defendant Harris went to Plaintiff's cell on P-Ward, handcuffed him, and ordered him to exit his cell. Plaintiff complied. As Defendant Harris put leg irons around Plaintiff's ankles he broke away and ran back towards his cell. Defendant Harris maintains that Plaintiff was trying to retrieve the cell phone and, in an attempt to get to it before Plaintiff, both the officer and inmate fell onto Plaintiff's bed. Defendant Harris managed to confiscate the cell phone at which time Plaintiff ran out of the cell and knocked on the floor yelling "They are beating me! Help ! Help!" Defendant radioed his supervisor, Sergeant Clay, who was already en route to his location. Sgt. Clay observed Plaintiff as he laid himself down on the floor and yelled for help. Defendant Harris denies that he used any force on Plaintiff. *Doc. No. 28, Exh. 2.*

Defendant Harris' evidence includes Captain Janet Hicks' investigative report. She obtained a written statement from Plaintiff on May 19, 2012, wherein he stated that after he was handcuffed he attempted to go back in his cell to remove his sweatshirt after being told it was warm outside and believing he was being escorted out for daily exercise.

Plaintiff further asserted in his statement that Defendant Harris then grabbed him, jumped on his back, and forced him face down on the bed. Based on her investigation into the incident, Captain Hicks made the following determination:

> **Finding**:
>
> On the date and time in question, inmate Richard Hollingsworth, WM/276260, attempted to keep Officer Irvin Harris and Ronnie Sheppard form finding a cellular telephone that he had on his bed. Inmate Hollingsworth dove on his bed and Officer Harris physically took the cellular telephone that inmate Hollingsworth's body was on top of  and inmate Hollingsworth began to shout that the officers were beating him. Sgt. Bernadette Clay was present and she observed inmate Hollingsworth dropping to the floor and shout that he was being beat. Inmate Hollingsworth stated to this writer that he thought he was going for a walk and he had his sweatshirt on. When he went back in his cell, he was going to take the sweatshirt off, not trying to lie on and hide the cellular telephone. He now states that he was not beat that when they thought he was hiding the phone, they were on his back and he has a hernia. He admits to this writer that he had the phone and he understands that the officers were doing their job.
> 5/19/2012 12:56 PM by \janet.hicks
>
> **Recommendations of Investigating Officer**:
> The use of force was minimal and necessary to gain possession of a cellular telephone that the inmate was lying on top of.

*Doc. No. 28, Exh. 3* at 4.

Following the incident, Plaintiff was escorted to the medical unit for a body chart. The examining nurse noted no bruising, abrasions, or skin tears. Plaintiff informed the nurse that mild skin redness on his upper right knuckle area was eczema. *Doc. No. 28, Exh. 4; Exh. 3* at 2, 3.

As explained, Defendant Harris denies Plaintiff's allegations regarding the use of force and maintains that the only force used was that which was necessary and

appropriate to maintain control over Plaintiff and to keep him from destroying contraband. In his opposition, Plaintiff maintains Defendant Harris' use of force was not made in a good faith effort to restore order and discipline where the contraband item was simply a cell phone, he was restrained and defenseless, and at no time did he pose a threat to Defendant Harris.  After Defendant Harris confiscated the cell phone, Plaintiff claims the officer became verbally and physically aggressive, used racial slurs against Plaintiff, and threw him to the floor and placed his knee in Plaintiff's back with his full body weight "for a significant period of time." Plaintiff asserts that Defendant Harris "specifically used his knee and body to torment Plaintiff's hernia even when Plaintiff continued to inform him of his affliction."  Plaintiff further states that after the incident his hernia swelled significantly and his hernia pain increased in severity requiring treatment with prescription narcotic pain medication. *Doc. No. 31.*

Although Defendant Harris argues that Plaintiff experienced less than minor injuries, as noted, Plaintiff contends the guard's actions, in addition to being unprovoked and unnecessary, also exacerbated the condition of his hernia causing it to swell and also increased the severity of pain associated with the hernia causing him to seek medical attention for the increased pain a few days after the incident and that Defendant Harris was aware that Plaintiff had a hernia. *See Harris*, 97 F.3d at 505.   In *Wilkins* the Supreme Court held that the minor nature of an inmate's injuries is not dispositive of an excessive force claim.  *Id*. 559 U.S. at 34 (Dismissal of "a prisoner's excessive force claim based entirely on . . . [a] determination that his injuries were '*de minimis*'[is improper] . . . [as it] is at odds with *Hudson's* direction to decide excessive force claims based on the nature

of the force rather than the extent of the injury. . . .");  *Hall*, 447 F. App'x at 923-24.  The nature of the injuries suffered by Plaintiff will, however, remain relevant to whether Defendant Harris used force as described by Plaintiff and whether he acted "'maliciously and sadistically'. . . ."  *Wilkins*, 559 U.S. at 40.

Viewing the facts in the light most favorable to Plaintiff, as the court must at this stage in the proceedings, the court concludes Defendant Harris is not entitled to qualified immunity as Plaintiff has alleged facts sufficient to survive this Defendant's motion for summary judgment regarding the excessive force claim lodged against him.  *Skrtich*, 280 F.3d at 1301.  Specifically, disputed issues of material fact exist regarding the use of force and whether Defendant Harris acted "maliciously and sadistically" to cause harm.  Consequently, the motion for summary judgment regarding the excessive force claim presented against Defendant Harris in his individual capacity is due to be denied.

### III.  CONCLUSION

In light of the foregoing, it is the RECOMMENDATION of the Magistrate Judge that:

1.  Plaintiff's request for injunctive relief (*Doc. No. 1*) be DISMISSED as moot;

2.  The motion to dismiss filed by Defendant Baker  (*Doc. No. 19*) be GRANTED to the extent this Defendant seeks dismissal of this case due to Plaintiff's failure to properly exhaust an administrative remedy prior to filing this case;

3.  This case be DISMISSED with prejudice against Defendant Baker under 42 U.S.C. § 1997e(a) for Plaintiff's failure to exhaust an administrative remedy.

4.   Defendant Thomas' motion for summary judgment (*Doc. No.  28*) be GRANTED;

5. Defendant Harris' motion for summary judgment (*Doc. No. 28)* regarding the claim for monetary damages lodged against him in his official capacity be GRANTED as this Defendant is entitled to absolute immunity from this claim;

6.   Defendant Harris' motion for summary judgment (*Doc. No. 28*) regarding Plaintiff's Eighth Amendment excessive force claim lodged against him in all aspects of his individual capacity be DENIED;

7.   This case be set for a jury trial before the District Judge assigned to this case on Plaintiff's excessive force claim against Defendant Harris in his individual capacity.

It is further

ORDERED that **on or before April 30, 2015**, the parties may file an objection to the Recommendation. Any objection filed must specifically identify the findings in the Magistrate Judge's Recommendation to which a party objects.  Frivolous, conclusive or general objections will not be considered by the District Court.  The parties are advised this Recommendation is not a final order and, therefore, it is not appealable.

Failure to file a written objection to the proposed findings and advisements in the Magistrate Judge's Recommendation shall bar the party from a *de novo* determination by the District Court of issues covered in the Recommendation and shall bar the party from attacking on appeal factual findings in the Recommendation accepted or adopted by the District Court except upon grounds of plain error or manifest injustice.  Nettles v. Wainwright, 677 F.2d 404 (5th Cir. 1982).  See Stein v. Reynolds Securities, Inc., 667

F.2d 33 (11th Cir. 1982).  See also Bonner v. City of Prichard, 661 F.2d 1206 (11th Cir. 1981) (en banc), adopting as binding precedent all of the decisions of the former Fifth Circuit Court of Appeals handed down prior to the close of business on September 30, 1981.

DONE this 13th day of April 2015.

/s/Terry F. Moorer
TERRY F. MOORER
UNITED STATES MAGISTRATE JUDGE